CAINE, PLAINTIFF, *v.* LAKEWOOD (CITY) ET, DEFENDANTS.

Common Pleas Court, Cuyahoga County.

No. 748465.   Decided June 2, 1961.

*Mr. Hugh McNamee*, for plaintiff.
*Mr. Frank Seth Hurd*, of counsel, *Messrs. Johnson, Weston, Blackmore, Cory & Hurd*, for defendant City of Lakewood.

*Messrs. Squire, Sanders & Dempsey, Mr. Thomas J. Quigley,* for defendant Eggleston Development Company.

(AMMER, J., of Pickaway County, sitting by assignment.)

## STATEMENT OF FACTS

AMMER, J.  This is a taxpayer's suit brought under the provisions of Sections 733.56 and 733.59, Revised Code, asking for a permanent injunction against the defendant City and Development Company from performing any act in consequence of the action of the City Council as to approval of a plat of land in that city.  The temporary restraining order was granted and the matter was heard as to a permanent injunction based on the petition, answers of the two defendants, stipulations and testimony of witnesses.  The plaintiff Francis J. Caine is a resident and taxpayer of the City of Lakewood and made the necessary requests in writing to the Law Director to bring an action for injunction and set aside an action of City Council relative to approval of a plat of land in that city.  The Law Director refused such request and this action is brought by the plaintiff on behalf of the City.

The defendant City of Lakewood is a municipal corporation in Cuyahoga County, and is governed by a charter pursuant to the provisions of the Constitution of Ohio. The Charter of the City provides for a council consisting of seven members and at all times relevant thereto there were no vacancies on said council.

Robert R. and Leah M. Morrow were owners of a certain parcel of real estate located on Edegwater Drive in Lakewood, Ohio, and in September, 1960, a plan and project was devised for the purpose of acquiring said real estate, causing it to be subdivided and selling parcels thereof for profit.  Actively participating and assisting in the formulation, activation and

promotion of said plan and project from the initial stages were the defendant Eggleston Development Company and F. Wilson Chockley then and now a member of the City Council of Lakewood.

A proposal for subdivision of said property into sixteen parcels and dedication of a part thereof to the public for street purposes was drafted on behalf of the owners, the Morrows, and was presented to the Lakewood Planning Commission by Phillip Eggleston of the defendant corporation on September 15, 1960. On September 20, 1960, said proposal was also considered at a meeting of the Regional Planning Commission which is a public body organized for the purpose of advising and making recommendations to participating municipalities within Cuyahoga County with respect to plans for the use of land within such municipality.

On September 29, 1960, a plat setting forth the proposed subdivision of the Morrow property was presented at a meeting of the Lakewood Planning Commission and the Commission through its chairman gave informal approval to the plat. On November 10, 1960, the Lakewood Planning Commission unanimously approved the linen plat plan of the Morrow subdivision. Such approval of the Lakewood Planning Commission now appears on said plat which was introduced into evidence as Plaintiff's Exhibit G. On said plat is a dedication of a portion of said property to the public for street purposes and such plat has been subscribed and acknowledged in the manner required by the City Charter.

Phillip Eggleston of the defendant corporation and F. Wilson Chockley were present at all of the above meetings.

On December 1, 1960, Phillip Eggleston and Warner Eggleston of the defendant corporation, James Stouffer and F. Wilson Chockley deposited the sum of $12,500.00 each in an account at the Terminal Branch of the National City Bank in the name of Edgewater Land Company which account was opened on that date. It has been stipulated that the activites of Mr. Chockley were motivated in part by the expectancy of profit. A real estate sales agreement was entered into for the sale of the Morrow property between the Morrows and Phillip Eggleston on November 9, 1960, and an escrow was opened with the First Federal Savings and Loan Company of Lakewood on

November 10, 1960. A warranty deed was executed by the Morrows as grantors to the Eggleston Development Company as grantee and the same deposited in escrow on November 11, 1960. The deed was filed for record on December 12, 1960, upon completion of the escrow conditions. The Regional Planning Commission upon request of council submitted a complete report as to the Morrow property and recommended certain changes in said plat. At a regular meeting of the Council of the City of Lakewood held December 5, 1960, the report of the Regional Planning Commission was read. Council at that time adopted an oral amended motion to the effect that the report of the Regional Planning Commission be received and filed and the plat of the subdivision of the Morrow property proposed by the Eggleston Development Company be approved. The vote on said motion was four ayes and three nays with F. Wilson Chockley as President of the Council casting one of the affirmative votes.

On December 6, 1960, said plat under the title of Edgewater Estates Division was recorded in the record of the recorder of Cuyahoga County, and said record bears the following legend:

"Council

"Plat and subdivision approved by the Council of the City of Lakewood, Ohio. Motion adopted.

(Sig.)   F. Wilson Chockley, Jr.        (sig.)   Henry A. Reese
         President                                        Clerk"

From the evidence presented it appears that since December 12, 1960, the defendant Eggleston Corporation has entered into contracts for the wrecking of the single residence building located on the property, for the installation of water and sewer lines, and for construction of the first of sixteen houses.

### ISSUES AND THE LAW

Several issues are submitted in this matter and each will be discussed under a separate heading.

1. *WERE THE MORROWS THE OWNERS OF THE PLAT OF LAND AT THE TIME THE CITY PLANNING COMMISSION AND COUNCIL APPROVED THE PLAT?*

This issue is of importance herein in view of the sales agreement entered into between the Morrows and Phillip Eg-

gleston on November 9, 1960, and the subsequent escrow provisions relative to said sales property. The action of the Planning Commission together with that of Council related to the Morrow property as developed by the Eggleston Development Company.

The Morrows owned the plat of land at the time the plat was presented to the Planning Commission and as owners they signed the plat. Their signatures were verified by a notary public as required by the City Charter. It appears that even though there was a sales agreement entered into as to said land, that the Morrows remained the owners of the plat of land until the completion of the escrow provisions on December 12, 1960. It therefore appears that the Morrows were the owners as of the date that the same was approved by the Planning Commission as well as by Council and that they did not convey title until December 12, 1960, when Eggleston received the deed from the First Federal Savings & Loan Association as escrow agent. In 20 Ohio Jurisprudence (2d), at page 216, the following is stated

"Since delivery is essential to the efficacy of a deed, it is obvious that, as a general proposition, a deed deposited in escrow takes effect from the delivery by the depositary to the grantee, and is to be considered the grantee's deed from that time. Conversely, until the escrow conditions are performed, and the deed delivered over, the legal title does not pass, but remains in the grantor, . . . ."

To the same effect is the case of *Rathmell* v. *Shirey et al.*, 60 Ohio St., 187 (1899), and *Zangerle* v. *State, ex rel. Gallagher, et al.*, 120 Ohio St., 139 (1929).

It therefore appears that the Morrows were the ones who submitted the plat and whose name appeared thereon and that they were the owners of the property at all times at which action was taken on the same by the Planning Commission and Council and that said plat therefore was properly submitted by the owners of said property.

2. *WAS APPROVAL OF THE SUBDIVISION BY THE COUNCIL OF THE CITY OF LAKEWOOD REQUIRED UNDER PROVISIONS OF ARTICLE 14 SECTIONS 23 and 24 OF THE CHARTER OF THE CITY OF LAKEWOOD.*

Article 14, Sections 23 and 24 of said Charter reads as follows:

Section 23

4. "A proprietor of lots or grounds within the City who subdivides or lays out said lots for sale shall cause to be made accurate maps or plats of such subdivision by a competent surveyor or civil engineer, describing with certainty all of said lands laid out and all lands granted for streets, alleys, commons or other public uses. All said lots showing upon said plat shall be numbered by progressive numbers and said plat shall show the exact length and width of each lot and show all measurements of all lines, widths of streets and other data necessary or required to be submitted. Such map or plat, before the submission to the Council for approval, shall be submitted to the Planning Commission, who shall either approve or disapprove said plat, and if approved shall bear the written approval of the Commission upon the face thereof and if disapproved shall be returned to such proprietor, within thirty (30) days, offering said lands for dedication, together with written objections to the same. Said map or plat shall be subscribed by the proprietor before an officer authorized to take the acknowledgment of deeds, who shall certify his official act on the map or plat. If any owner is a non-resident of the State, his agent authorized by writing may make such acknowledgment of such map or plat, and if the execution is by agent, his written authority shall be in such form as is necessary under the law to constitute a valid power of attorney and such power of attorney shall be recorded in the office of the County Recorder of Cuyahoga County.

"Said plat shall further be certified to by the surveyor as to the correctness of all measurements appearing upon said plat.

"If the Planning Commission shall refuse to approve said plat, the said proprietor of lands may thereupon submit the said plat or map for approval to the Council, together with the written objections of the Planning Commission. No such map or plat of any subdivision within the limits of the City of Lakewood shall be recorded until the Planning Commission thereof certified that the streets as laid down on the plat of

said sub-division correspond with those laid down on the recorded plats of the City. When there are streets laid down, in addition to those adopted by the Planning Commisson, no such plat shall be recorded until it has been approved by the Planning Commission or Council of the City of Lakewood, and no such streets shown thereon shall be considered as dedicated streets of the City of Lakewood until such time as said plat has been accepted and approved by the Council of the City of Lakewood. No such proprietor of land shall sell by land contract, deed, or agreement, any lot or lots in said plat or map of said subdivision until said map or plat has been duly approved by the Planning Commission of the Council of the City Lakewood, and thereafter accepted by the Council of the City of Lakewood."

Section 24:

"The map or plat so recorded shall thereupon be a sufficient conveyance to vest in the City the fee of the parcel or parcels of land designated or intended for streets, alleys, ways, commons, or other public uses, to be held in the corporate name in trust to and for the uses and purposes in the instrument set forth, expressed, designated or intended."

Section 27 of said Charter is as follows:

"No street or alley dedicated to public use by the proprietor of ground in the City shall be deemed a public street or alley, or under the care or control of the Council unless the dedication is accepted and confirmed by ordinance passed for such purpose."

The plaintiff taxpayer claims that the approval of the City Council was necessary as to said plat even though the Planning Commission of the City had approved the same, and that such approval was required by a resolution or ordinance as provided by Article 3, Section 8 of said Charter, rather than by oral motion as was done in this case.

The defendants claim that approval of Council was not necessary in view of the approval of the City Planning Commission and if the same was needed that this could be done by oral motion rather than by resolution or ordinance.

A reading of Section 23 of Article 14 of the Charter sets forth the procedure that one must follow in obtaining approval of a plat for a subdivision. As stated in the first paragraph

of said section, the first step is that the map or plat is to be presented to the Planning Commission who should either approve or disapprove such plat, and if approved the Commission shall write the same upon the face thereof, and if disapproved, the same shall be returned to the proprietor within thirty days together with written objections to the same. It is noted that in this section it specifically states that the plat is to be presented to the Planning Commission "before the submission to Council for approval."

A reasonable interpretation of this provision would indicate that the matter must first be presented to the Planning Commission before it is presented to Council for approval. It is noted that in the third paragraph of this section that provision is made that if the Planning Commission shall refuse to approve said plat the proprietor may thereupon submit the same plat for approval to the Council together with the written objections of the Planning Commission and after the Planning Commission have certfied that the streets are laid out to correspond with those laid down on the recorded Plat of the City. It is clear from a reading of this provision that it was the intention of the framers of the Charter that a plat need be presented to the Council for approval *only if* the Planning Commission had initially disapproved the same. There is no provision in the Charter that states that in all cases that Council shall approve the plat but the language is clear that the matter should be presented to Council only in case of the disapproval of the plat by the Planning Commission.

In cases where the plat had been disapproved by the Planning Commission and the same is presented to Council, action of Council thereon must clearly be by either resolution or ordinance under the provisions of Article 3, Section 8 of the City Charter which reads in part as follows:

Section 8. Ordinances and Resolutions.

"Each proposed ordinance or resolution shall be introduced in written or printed form and shall not contain more than one subject which shall be clearly stated in the title; but general appropriation ordinances may contain the various subjects and accounts for which monies are appropriated. On the passage of each ordinance or resolution the vote shall be taken by yeas and nays and entered upon the Journal.

"No resolution of permanent character or ordinance shall be passed until it has been read by title only, unless a majority shall request that it be read in its entirety on three (3) separate days unless the requirement of reading on three (3) separate days has been dispensed with by a two-thirds (2/3) vote of all of the members elected to Council taken by yeas and nays and entered upon the Journal but no ordinance or resolution shall under any circumstances be adopted or passed unless it has been read on three (3) separate days, (a) which changes the amount of salary or compensation for any elected officer of the City, (b) which amends any zoning ordinance, (c) which grants, renews or extends a franchise or other special privilege, or (d) which regulates the rate to be charged by a public utility for its services."

It is noted that in this provision of the Charter that it is provided that a resolution of permanent character or ordinance should be in writing and should be read on three separate days unless such reading is dispensed with by a two-thirds vote of Council.

Robert's Rules of Order which have been adopted by the Council of the City of Lakewood as governing the proceedings of Council, except as otherwise provided for (Section 121.02 of the Lakewood Codified Ordinances enacted pursuant to Article 1, Section 2 and Article 3, Section 5 of said Charter) at pages 33 and 34 (said rules have been entered into evidence as defendant Eggleston's Exhibit 2) read as follows:

"A motion is a proposal that the assembly take certain action, or that it express itself as holding certain views. It is made by a member's obtaining the floor as already described and saying, 'I move that' (which is equivalent to saying, 'I propose that'), and then stating the action he proposes to have taken. Thus a member 'moves' (proposes) that a resolution be adopted, or amended, or referred to a committee, or that a vote of thanks be extended, etc.; or 'That it is the sense of this meeting (or assembly) that industrial training,' etc. Every resolution should be in writing, and the presiding officer has a right to require any main motion, amendment, or instructions to a committee to be in writing. When a main motion is of such importance or length as to be in writing it is usually written in the form of a RESOLUTION; that is, beginning with

the words, 'RESOLVED, That,' the word 'RESOLVED' being underscored (printed in italics) and followed by a comma, and the word 'That' beginning with a capital 'T.' If the word 'Resolved' were replaced by the words 'I move,' the resolution would become a motion. A resolution is always a main motion. In some sections of the country the word 'resolve' is frequently used instead of 'resolution.' In assemblies with paid employees, instructions given to employees are called 'orders' instead of 'resolutions,' and the enacting word, 'Ordered' is used instead of 'Resolved.'

"When a member wishes a resolution adopted, after having obtained the floor, he says, 'I move the adoption of the following resolution,' or 'I offer the following resolution,' which he reads and hands to the chair. If it is desired to give the reasons for the resolution, they are usually stated in a *preamble*, each clause of which constitutes a paragraph beginning with 'Whereas.' The preamble is always amended last, as changes in the resolution may require changes in the preamble."

It is clear from a readng of Robert's Rules of Procedure that a motion is simply for an explanation by a body as to the views held by that group. It is further provided in said rules that such motion is made for an adoption of a resolution and simply as a means of bringing to the attention of a body some matter which if of sufficient importance should be in resolution form and in wrting.

Certainly for approval of Council of a plat, if such is necessary, that this is of a permanent character, and should be in written form and in accordance with the provisions of the Charter for passage of a resolution or ordinance rather than by oral motion.

It is also clear that under the provisions of Section 23 of Article 14 of the Charter that in the case of dedication of streets that this should be by ordinance as is specifically provided for by Section 27 of the City Charter. In Section 23 of Article 14 there is a further provision that no proprietor of land shall sell by land contract, deed, or agreement, any lot or lots in said plat until said plat has been duly approved by the Planning Commission or the Council of the City of Lakewood, and "thereafter accepted by the Council of the City of Lakewood." This last provision it would appear would limit the

sale of such lots or subdivision until such time that Council had accepted the dedicated streets in the City of Lakewood and that such action of dedication must be by ordinance. This last matter, of course, is not before the Court at this time but it is indicative of the intent throughout Section 23 of Article 14 of the Charter that where Council approval is necessary as to a plat or the dedication of streets in a plat that such must be done by resolution or ordinance in accordance with Article 3 Section 8 of the Charter.

It is therefore the conclusion of the Court that in view of the fact that the Planning Commission had approved this plat that the Council action by oral motion herein was mere surplusage and of no force and effect and that the fact that it was done erroneously if the same had been necessary, that is by oral motion rather than by resolution or ordinance under the provisions of Article 3 Section 8 of the Charter, is of no consequence.

It is therefore the conclusion of the Court that the approval of Council in the instant case was not needed and any errors by that body in granting the approval can have no legal consequences upon the legality of the procedures herein which were proper and final prior to the purported action of Council on December 5, 1960.

There are other issues presented in this case, one being the question as to conflict of interest as to the President of Council being one who voted in favor of the oral motion and he having a direct personal interest in the development of the land. However, the Court feels that this issue need not be decided in view of the surplusage of such action of Council. It is a well established principle of law that a member of Council should not vote on any matters in which he has a direct personal interest.

Any further discussion as to the conflict of interest issue, or other issues in this case, are not necessary in view of the holding of the Court as to the action of the Council herein not being needed.

In view of the above holding of the Court judgment therefore will be entered in favor of the defendant City and Corporation and the temporary restraining order will be ordered dismissed, all at the plaintiff's costs.

140

Counsel for the Defendant Eggleston Development Company will prepare an entry consistent with the above ruling of the Court and saving proper exceptions.